No. 12,690.

James A. Erwin et als. vs. Charles Chaffe et als., and Tutorship of the Minor Heirs of Mrs. M. C. Erwin, No. 393, Probate; Opposition to Account, (Consolidated).

|51 41|
|106 87|

SYLLABUS.

A certain sanctity attaches to a judicial sale which has been made after the due performance of all legal formalities and requirements; and, in the absence of clear proof of fraud or unfairness, it is but a reasonable presumption that the public officers and other functionaries have performed their duties in that regard.

And when the positive evidence of several competent witnesses supports the appraisement, it is but just, in the interest of an orderly administration of the law, that the validity of such sale be maintained, notwithstanding a number of credible witnesses were produced at the trial to testify that the property was really worth much more.

ON appeal from the Seventh Judicial District Court for the parish of Madison. *Montgomery, J.*

---

*Stone & Holmes,* (J G. Hawkes, of counsel), for Plaintiffs, Appellants.

---

*W M. Murphy,* for Defendant, Appellants.

---

Argued and submitted February 23, 1898.

Opinion handed down November 21, 1898.
Rehearing refused January 9, 1899.

The opinion of the court was delivered by

WATKINS, J. Alleging themselves to be the lawful heirs of Mrs. Matilda C. Erwin, deceased, the five plaintiffs join in this suit against the several defendants, principally, for the revocation and annulment of all the judicial proceedings and acts of sale and mortgage whereby their alleged title to the property known and designated as the California plantation has been divested, and for other purposes which are ancillary thereto.

On the trial in the court below, there was a judgment pronounced of the following tenor, viz.:

First—That the plaintiffs be recognized as the heirs of Mrs. Matilda C. Erwin, deceased; and that they do have and recover judgment in their favor and against M. P. Erwin, tutor, for the sum of $19,500, with interest thereon at five per cent *per annum* as follows, viz.: on $10,152.86 from the 5th of September, 1890, and on the remainder thereof from date of this decree.

That the legal mortgage resulting from the registry of an abstract of inventory of the estate of Mrs. M. C. Erwin be recognized for the full amount of said judgment, upon the real estate of said Erwin in the parish of Madison, whether owned by him individually, or as his interest in the residue of the community estate after payment of community debts; and that this mortgage shall take effect and have priority from the date of the registry of said abstract of inventory, viz.: the 30th of September, 1890.

Second—That plaintiffs be recognized as creditors of the community heretofore existing between their father and mother aforesaid, M. P. and M. C. Erwin; and to them as creditors said M. P. Erwin is decreed liable *in solido* with said community for the sum of $10,152.86, and interest thereon at five per cent *per annum* from the 5th of September, 1890.

Third—That the plaintiffs be recognized as owners of one-half of the *residuum* of the community estate, after the payment of community debts.

Fourth—That all the acts of mortgage described in the pleadings as-

having been executed by said M. P. Erwin subsequent to the 5th of September, 1890, on the California plantation, described in plaintiffs' petition, as well as those executed by subsequent claimants or holders of said plantation, and the claims which those acts purport to secure, be each and all, decreed to be of no effect, either against said community, or against the claims of the plaintiffs, either as creditors of said community, or as owners of one-half of the *residuum* of same after payment of community debts.

Fifth—That the claims evidenced by the notes identified with acts of mortgage upon said California plantation as follows, viz.: J. H. Gilfoil and M. P. Erwin to Chaffe & Powell and West, of date 6th of February, 1891; that of M. P. Erwin to J. H. Gilfoil, of date March 18th, 1892; that of M. P. Erwin to Chris-Sharp Commission Co., of date 4th of January, 1893, be declared, each one and severally, illegal, and rejected as of no effect as against said community, or the rights of plaintiffs as creditors, or as owners of same.

Sixth—That the sale by the sheriff under executory proceedings styled H. and C. Newman vs. M. P. Erwin *et als.*, of date 15th of April, 1893, and adjudication of said California plantation thereunder to the defendant, J. B. West, and the act of sale of same date by said West to the defendant, C. A. Williams, with vendor's lien and mortgage retained for the purchase price; and also, an act of mortgage of same date by said Williams to said Chris-Sharp Commission Co., and by said Williams to Chaffe, West & Co. of dates respectively April 15th, 1893; and by said Williams and said M.P.Erwin of date November, 1894; and act of sale by the sheriff to Charles Chaffe of date 24th of August, 1895, be, each one and all, decreed to be null and void and of no effect.

Seventh—That said California plantation be recognized as, and decreed to be the property of the said Erwin community and that possession of same be restored to said community; and that the said defendants, M. P. Erwin, C. A. Williams, Chaffe, Powell and West, Chaffe, West & Co., and J. B. West, be decreed to be solidarily bound for and required *in solido* to account and pay over to said Erwin community the rents and profits of same to-wit: the sum of seven hundred dollars *per annum* for the years 1893 and 1894; and that the defendants M. P. Erwin, Chaffe, Powell and West, Chaffe, West and Co., J. B. West and Charles Chaffe be decreed solidarily bound for and required *in solido* to account and pay over to the said Erwin community

the rents and revenues of said California plantation, viz: the sum of seven hundred dollars *per annum* for the years 1895, and for each subsequent year until possession thereof be restored to said community, and that said several sums of seven hundred dollars each bear interest at the rate of five *per cent. per annum* from the 31st of December of the year same is due and payable.

Eighth—That the mortgage executed by M. P. Erwin in favor of H. and C. Newman, of date January 22nd, 1887, be reinstated as a valid and existing mortgage upon said California plantation, and recognized as being of the same rank and dignity as it had prior to the 15th of April, 1893; and that Chaffe, Powell and West be recognized as creditors of said Erwin community for taxes paid, according to an itemized statement annexed; and the amount of said taxes be credited on the judgment herein rendered against them for revenues, and the balance of the judgment against them for revenues be credited on the mortgage note for three thousand three hundred dollars in favor of H. & C. Newman, of which Chaffe, Powell, & West are recognized owners and holders.

Ninth—That M. P. Erwin be removed from the tutorship of the Erwin minors, and that their undertutor take the necessary steps to obtain the appointment of a suitable person as undertutor for them; and that the account filed by the tutor be so amended as to conform to the decree.

From that judgment both plaintiffs and all the defendants, except M. P. Erwin, have prosecuted appeals; but one transcript of the proceedings has been filed.

The plaintiffs are the issue of the marriage of M. P. Erwin and Matilda C. Erwin—one of them being an emancipated minor, and the other four minors represented by their undertutor, their father and natural tutor being one of the defendants—their mother having died intestate in 1890, possessed of some separate property and money, and an undivided half interest in the assets of the matrimonial community.

Amongst other valuable properties the community owned and possessed was the California plantation in Madison parish, upon which rested a conventional mortgage and vendor's lien securing the payment of a note in favor of H. and C. Newman for the capital sum of three thousand three hundred dollars falling due January 22nd, 1891 —subsequent to the death of plaintiffs' mother.

It is alleged that the defendants, Chaffe, Powell, and West, through the instrumentality of, and co-operation with their father, M. P. Erwin, subsequent to their mother's death, acquired said note and mortgage of H. and C. Newman, and foreclosed said mortgage in the name of the latter—in executory proceedings entitled H. and C. Newman vs. M. P. Erwin—and caused the California plantation to be adjudicated to J. B. West, another of the defendants, and a member of the firm of Chaffe, Powell, and West, on April 15th, 1893.

It further alleged, that the purposes and objects to be thereby attained were to divest the community of its ownership of said property and discharge the legal mortgage of the plaintiffs thereon, resulting from the recordation of an abstract of an inventory of the property of the community, on the 30th of September, 1890.

That it was further agreed by the aforesaid parties, that said adjudicatee should transfer said California plantation to a party to be interposed for Erwin and that, to carry out and consummate that agreement, one C. A. Williams, a nephew of Erwin residing in the adjoining parish of East Carroll, was selected as the person to take title to the property, and hold same for Erwin, and that the property was conveyed to him accordingly.

This adjudication to West, and his conveyance to Williams, are attacked in this suit, and their annulment and revocation is the chief aim and object to be thereby attained; and it is charged that all the various sales and mortgages, *etc.* thereafter made, are necessarily, subsidiary thereto and founded thereon.

The plaintiffs allege, that at the death of their mother on September 5th, 1890, not only was she the owner and possessor of separate paraphernal money and property in her own right, but that the community was solvent and perfectly able to satisfy all just demands against it, including that of H. and C. Newman under which said sale was made to West; and, hence, there was no occasion for the same to have been made.

That H. and C. Newman were not urging or demanding payment of this debt, but, on the contrary, had, but recently previous to said agreement under which said sale was made, granted Erwin an extension of twelve months; and that they only yielded an acquiescence therein at the request and entreaty of Erwin and West; and that a sale made under such a state of facts is illegal and void, and in viola—

tion of their rights as beneficiary heirs of their mother, and should be annulled and revoked—especially in view of the fact that the sale was made for a wholly inadequate consideration.

The plaintiffs charge, that it was stipulated and agreed by and between Erwin and Chaffe, Powell and West, as one of the considerations thereof, that the person who was selected to receive title was to execute a note and first mortgage on the property in favor of H. and C. Newman for the amount of their debt; another note and mortgage for several thousand dollars in favor of the Chris Sharp Commission Company of St. Louis; and, also, to lease same to Erwin and waive his lessor's lien on the crops on the plantation in favor of Chaffe, Powell, and West, to whom he was to further mortgage same for several thousand dollars, to secure the crop advances they had agreed to make to Erwin in 1893.

These stipulations plaintiffs allege to have been consummated and carried out by the conveyance of West to Williams, and by Williams to the parties aforesaid; and these acts and transactions are pointed out by the plaintiffs as conclusive proof that the price of adjudication to West was wholly inadequate, notwithstanding same appeared to have been two-thirds of the amount of the appraisement as made— they being no parties thereto, individually.

The plaintiffs charge, that any and all matters of indebtedness which figure in the various transactions named, were contracted, if at all, subsequent to their mother's death, and did not bind the community, and, that same, in no manner, inured to their benefit or advantage, and can not be treated as any part of the legal and valid consideration of said acts.

The defendants rest their case solely upon that judicial sale to West, and affirm that the price paid was the full value of the property; and they insist, that, notwithstanding West conveyed the property to Williams immediately after the sale to him at the request of Erwin, for the price of nine thousand dollars, the same was wholly upon terms of credit, and Williams having failed to make any payment thereon, Chaffe, Powell and West foreclosed the mortgage and the property was adjudicated to C. Chaffe for Chaffe, Powell, and West, at the price of three thousand dollars, thus evidencing the fact that nine thousand dollars was an excessive valuation therefor.

On the law and evidence, the Judge *a quo* sustained the plaintiffs' view and annulled the sale of April, 1893, and, likewise, all the acts

of sale and mortgage which were thereon subsequently executed; and. it, at the same time, reinstated the Newman mortgage in the name of Chaffe, Powell, and West as the assignees thereof—recognizing same- as ranking the plaintiffs' legal mortgage.

The effect of the aforesaid decree is to restore the California plantation as it stood at the time of the dissolution of the community and. to recognize the plaintiffs as creditors of the community for the sum of ten thousand one hundred and fifty-two dollars and eighty-six. cents, with legal mortgage from date of registry, September 30th,. 1890, and as being entitled to one-half of the *residuum* of the community after its debts have been paid.

Its further effect is, that neither the rights and claims of the plaintiffs shall be, in any way, affected by either the acts and transactions- of the defendants, nor either of them, or by the claims, or matters of account which figure in them.

The plaintiffs proceeded by rule against M. P. Erwin, tutor, to account, and when he had filed his account, they filed an opposition thereto demanding an increased allowance in their favor; and those proceedings were cumulated with the principal action and the whole were tried together and but one judgment rendered.

From that decree the tutor has not appealed, and neither of the appellants has made any assignment of errors in this court, nor pre-- sented any application for the alteration in the amount thereof.

The contentions of the plaintiffs are sufficiently summarized in- their brief as follows, viz:

That the judgment should be amended in the following particulars (1) by rejecting the claim of Chaffe, Powell and West, as the · owners and assignees of the Newman debt; (2) by rejecting their claim for taxes paid; (3) by increasing the amount of the annual· rental of the California plantation and the plaintiff's credits in connection therewith; (4) by increasing the amount of their allowance against the community on account of the paraphernal claims of their- mother.

As appertaining to these numerous and complicated issues, the following statement will suffice for a perfect understanding of the situation, to which our opinion must be chiefly directed, viz.:

1. That the community owed Mrs. Matilda C. Erwin, at her death,. a paraphernal debt of ten thousand one hundred and fifty-two dollars and eighty-six cents, which is recognized as due to the plaintiffs as

her legal heirs, with legal mortgage from the 30th of September, 1890, the date of its registry.

2. That H. and C. Newman held a note of M. P. Erwin for the sum of three thousand three hundred dollars, of date January 22, 1887, secured by mortgage and vendor's lien on the aforesaid California plantation, falling due on the 22d of January, 1891, and that same was a community debt, and the mortgage securing same was the first and ranking incumbrance thereon.

3. That Chaffe, Powell & West were the owners and holders of two notes aggregating five thousand one hundred and sixty-seven dollars, of date March 18, 1892, secured by an act of mortgage which was executed by M. P. Erwin on his undivided one-half of the California plantation, and that said notes purport to evidence the balance which the community owed, at that date, to the firm of Gilfoil & Erwin, a planting and commercial partnership—Erwin having personated the community therein.

4. That Chaffe, Powell & West held a mortgage upon other property of date 6th of February, 1891, for the sum of eight thousand eight hundred dollars, and that same is by defendants alleged to be an indebtedness of the community.

5. That M. P. Erwin executed an act of mortgage on the California plantation on the 4th of January, 1893, for the sum of two thousand five hundred dollars, confessedly a community indebtedness.

6. This was the state of affairs on the 15th of April, 1893, when, under foreclosure proceedings, J. B. West became adjucatee of the California plantation, for the use and benefit of Chaffe, Powell & West, for the price of about four thousand three hundered dollars, the said firm having purchased the note and mortgage of H. and C. Newman and used their names in the executory proceedings.

7. That the property was appraised at the sum and value of six thousand dollars contradictorily with M. P. Erwin, tutor, and the bid of J. B. West exceeded two-thirds of that amount.

8. That on the day of the sheriff's sale, the 15th of April, 1893, J. B. West, the adjudicatee, conveyed said California plantation to one C. A. Williams, of the parish of East Carroll, and a nephew of M. P. Erwin, for the sum and price of nine thousand dollars, exclusively upon terms of credit, retaining a mortgage and vendor's lien upon the property.

9. That on the same date the purchaser, C. A. Williams, executed

.a mortgage on same property in favor of the Chris Sharp Commission Company for two thousand eight hundred dollars, same being a community indebtedness.

10. That on the same date said C. A. Williams executed another mortgage on the same property in favor of Chaffe, Powell & West for eight thousand eight hundred dollars, same purporting to secure crop advances to be made to M. P. Erwin as his tenant during the year 1893.

11. That said Williams executed a like mortgage in favor of Chaffe, Powell & West for a like sum, securing similar crop advances, and bearing date of November, 1894.

12. That C. Chaffe, representing Chaffe, West & Co., successors to Chaffe, Powell & West, became the purchaser of the California plantation on the 24th of August, 1895, at the price of three thousand dollars, under executory proceedings in the foreclosure of the mortgage C. A. Williams executed in favor of J. B. West, he having made default in the payment of his note at maturity thereof.

From the foregoing statement it is quite evident that the crucial question in the case, and that to which our attention must be first directed, is the validity or invalidity of the judicial sale of the California plantation which was made on the 15th of April, 1893, as upon it depends the validity or invalidity of all subsequent transactions and proceedings.

And for the purposes of the discussion of this question it may be assumed that the Erwin community was perfectly solvent on the date of its dissolution, by the death of Mrs. Matilda C. Erwin, on the 5th of September, 1890, and that the paraphernal claim of ten thousand dollars, which plaintiffs inherited from her, is unquestionably valid and binding upon the community at the date their legal mortgage was recorded, September 30, 1890.

The case presented upon the record is that of a creditor of the community whose claim is either secured by a mortgage inferior in rank, or not secured at all, seeking to improve his situation by purchasing a first and ranking mortgage upon the property of his debtor from another creditor so as to enable him to foreclose the latter and acquire the property without running the risk of successful competition at the sale, he being a purchaser with full subrogation to the rights of said creditor.

The proof discloses, and the fact is, that Chaffe, Powell & West

purchased from H. and C. Newman their mortage of three thousand three hundred dollars, with accumulated interest, which antedated the death of the plaintiffs' mother, paying therefor the full amount of same principal and interest.

That soon after having acquired same they commenced executory proceedings in the foreclosure of said mortgage, same having been inaugurated in the name of H. and C. Newman, upon the California plantation as the property of the Erwin community, and that all of same were commenced and conducted against M. P. Erwin, tutor, representing the succession and heirs of Mrs. Matilda C. Erwin, and against him personally.

That, after having had same duly appraised and advertised according to law, said property was adjudicated to J. B. West for the use and benefit of Chaffe, Powell & West, the assignees of H. and C. Newman, for the sum of about four thousand three hundred dollars, and credited same upon the writ of seizure and sale—the amount of the bid being in excess of two-thirds of the appraisement of the property.

There is no question of the validity of the H. and C. Newman debt, or of the fact that Chaffe, Powell & West became the purchasers thereof for a valid and full consideration, nor is there any question of the fact that they were creditors of the partnership of Gilfoil & Erwin, and of the Erwin community, subject to settlement.

Consequently, the only question there can be in regard to the validity of the sale is in reference to the adequacy of the price-pretermitting for the present discussion of the plaintiffs' charge that the parties to the executory proceedings interposed Williams as a person to take title for M. P. Erwin.

From the record it appears that at the time of the death of the plaintiffs' mother, the California plantation was held and owned, in division, by the Erwin community and J. H. Gilford, the latter being the owner of one-fourth, and the former of three-fourths.

That in 1891, subsequent to her death, proceedings were commenced for a partition thereof, and later a division in kind was made, the plaintiffs representing the community acquiring about seven hundred and eighty acres in full ownership.

Of this, the plaintiffs claim, and the trend of their testimony is, that there is about six hundred acres in cultivation, and was at the date of the death of Mrs. Erwin, and of the date of sheriff's sale.

That its rental value was three dollars to six dollars per acre, and that its sale value was from twelve thousand dollars to fifteen thousand dollars, at those dates respectively. And the plaintiffs cite the fact as one possessing some significance; that the whole property was estimated in the partition proceeding at twenty-three thousand dollars, and that their share would be equal to seventeen thousand dollars.

They charge in their petition that, in the course of the executory proceedings which led up to the judicial sale of April 15, 1893, two appraisers were selected and appointed to value the property, and "that they were induced to and did falsely appraise and value same at the sum of six thousand dollars, which was less than one-third of its value at the time of the appraisement," but an examination of the testimony fails to disclose any such a state of facts.

The testimony of a great many witnesses was taken, and they entered into all the details and particulars applicable to the California plantation and many other plantations in its immediate vicinity, but it would serve no useful purpose to attempt an analysis of it. Suffice it to say that it shows that the California plantation embraces about six hundred acres of cleared land, and is situated about one mile back from the Mississippi river, and in the rear of other plantations which are in front of it and situated on the bank of the Mississippi river.

Some of the plaintiffs' witnesses testify that all of the cleared land, or nearly all, was in cultivation in 1890 and 1893, and produced full crops, and several of them state that the plantation as a whole was worth at the date of the sheriff's sale, in April, 1893, as much as twelve thousand dollars, or fifteen thousand dollars.

One of them who professed great familiarity with the place said that, in his opinion, it was worth ten thousand dollars, or twelve thousand dollars.

By one witness, for the defendant, who cultivated this plantation in 1876, and knew it quite familiarly subsequent to that time it was, said it was badly damaged by the overflow of the Mississippi in 1882, and that was the means of closing its principal drains, which pass to the rear, and that same reduced the cultivable area and consequently its value very greatly as a plantation.

Another witness says that, to his knowledge, there is great deal of the open land on the plantation, in the rear portion thereof, which has been badly drained for many years, and, on that account, same has been rendered very unproductive.

Another witness states that a large portion of the plantation has remained uncultivated since 1892, and the uncultivated portion has been allowed to grow up in weeds, and on that account he is of opinion that it could not have been sold for as much as five thousand dollars in cash in April, 1893.

Another witness testified that there was no gin on the plantation, and had not been for many years, and that great inconvenience resulted from that fact to its operation.

Two other witnesses state, positively, that six thousand dollars was a full valuation for the property in April, 1893, and the sum of four thousand three hundred and thirty-five dollars, bid by J. B. West at the sheriff's sale, was reasonable and quite as much as either of them would have given for the property in its condition.

It further appears that quite a disastrous overflow of the Mississippi river occurred in May, 1893, immediately subsequent to the sheriff's sale, whereby the California plantation was inundated and greatly damaged, and, naturally enough, witnesses in testifying some years afterward of the value of the property were somewhat confusing in their statements, and in many instances inaccurate.

A careful examination and scrutiny of the testimony have not served to confirm us in the correctness of the conclusions arrived at in this regard by our learned brother of the District Court; on the contrary, it has satisfied us that under all the circumstances the appraisement of the property at six thousand dollars was a reasonably fair valuation therefor.

A certain sanctity attaches to a judicial sale which has been made after the due performance of all legal formalities and requirements, and in the absence of clear proof of fraud, or unfairness, it is but a reasonable presumption that public officers and other functionaries who participated therein have performed their duties in that regard.

And when the positive evidence of several competent witnesses supports the appraisement, we feel disposed, in the interest of an orderly administration of justice, to maintain the validity of the sale, notwithstanding a number of witnesses have been produced at the trial to testify that the property sold was really worth much more.

With reference to the plaintiffs' charge that the sheriff's sale was one of consent, and intended by all the parties thereto as a means of investing a title in M. P. Erwin, and that Williams was a person-

interposed to carry that purpose into execution, there is need of but little being said.

From all the evidence, we think it clear that Chaffe, Powell & West being creditors of the community, and of M. P. Erwin individually, were desirous of bettering their condition by acquiring the note of H. and C. Newman against the community, particularly in view of the fact that same was secured by a vendor's lien and mortgage, and ranked all other debts of the community, and on that account purchased same with full subrogation to all of their rights and privileges.

That was a valid transaction, and at a sale in the foreclosure of said mortgage, J. B. West, representing Chaffe, Powell & West, had a perfect right to buy the property.

Consequently, if it be admitted to have been the preconceived intention of that firm that the property should be thereafter conveyed to Williams as a party interposed for M. P. Erwin, and that same was an illegal transaction, the revocation of same would only result in reinvesting the title in them, and not in its annulment.

Being invested with a title by the sheriff's adjudication, they had a perfect right to sell the property to any one they chose, and that being the case there was not the slightest impropriety in their making an agreement beforehand to sell to some designated person, unless such person was an intending purchaser with means to buy.

Of course such arrangements should not be employed as a means of suppressing bids or preventing competition at the sale.

Such was the conclusion this court arrived at in the case of Mortgage Company vs. Pierce, 49 An. 390.

The complaint made in that case was of minors; that the judicial sale was a matter of an agreement and combination between their father and natural tutor and the mortgage creditors, the object of which was to vest a title in their father.

In the course of our opinion the Chief Justice, speaking for the court, said:

"The British and American Mortgage Company had the legal right to enforce payment, and neither Pierce, nor the succession of the wife, could control the corporation in the exercise of that right.

"They were without power to stay the executory proceedings which followed. The sale which resulted from these proceedings was a public one at which any person was at liberty to buy. Had the seizing creditor bought for precisely the same price for which the property

was adjudicated, there certainly could have been no legal obstacle in the way of its doing so if the proceedings themselves were proper and legal. Nothing was done, or alleged to have been done, which was either intended to deter bidders or to have resulted in doing so.

"It is argued that the price bid was much below the actual value of the property, but the mortgagor, the mother of the intervenors, had herself waived the benefit of appraisement.

"There was no legal reason why Hoffman, of the firm of Shattuck & Hoffman, could not buy the property at the offering.

"When the adjudication was made to him, and the price under the orders of the attorneys of the seizing creditors was credited upon the writ, the debt of Mrs. Pierce was instantly, as between her and the British and American Mortgage Company, paid and extinguished, and the ownership of the property passed at once to Hoffman. * * * If either the seizing creditor, or Hoffman, looking forward to the possibility of becoming a purchaser at the sale, had, in view of that contingency, made promises or arrangements, based upon that fact, with Pierce, this would have been doing with their own what they had a right to do. If the title passed to Hoffman by the sale as it did, the seized debtors had no ground of complaint; certainly none so far as Hoffman was concerned that he should make use of his own ownership so as to benefit their father. They might be able to find fault with their father that he should not subsequently have given them the benefit of any arrangement which he had been able to make, but they could not make their father, preferring to follow his own interest rather than theirs, if such was indeed his course, turn to the disadvantage of Hoffman who owed them no duty."

That is a case quite similar in all of its leading features to the instant one.

See also Amato vs. Ermann & Cahn, 47 An. 976; Gilkerson, Sloss & Co. vs. Bond & Williams, 44 An. 844, both of which are of like tenor.

The result of the foregoing conclusions is to maintain the sheriff's sale to J. B. West for the use of Chaffe, Powell & West, under the executory proceedings in the foreclosure of the mortgage and vendor's lien of H. and C. Newman on the 15th of April, 1893, and the effect of this decree will be to reinstate all the sales and mortgages which were predicated thereon, subsequently, and to leave all of those preceding said sale in the condition in which they were after the sale was made.

This decree will not, in any manner, affect the judgment of the judge *a quo* in respect to the community, or the settlement thereof, as its scope and effect are to eliminate the California plantation therefrom, only.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be so amended as to reject and disallow that portion of the plaintiffs' demand which relates to the annulment of the sheriff's sale and adjudication to J. B. West of the California plantation, of date April 15, 1893, and all the acts and transactions appertaining thereto, and to maintain the validity and legality thereof, and that as thus amended same be in all other respects affirmed, the cost of. appeal being taxed against the plaintiffs and appellants.